HOLME ROBERTS & OWEN LLP
Thomas J. Rossa (#2806)
Blaine J. Benard (#5661)
Jay D. Gurmankin (#3798)
Jeffery M. Lillywhite (#8920)
299 South Main Street, Suite 1800
Salt Lake City, Utah  84111-2263
Telephone:   (801) 521-5800
Facsimile:   (801) 521-9639



Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| AD-HATTERS, INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>WINGO SPORTS GROUP, INC., a Texas corporation,<br><br>Defendant. | **COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**Jury Trial Demanded**<br><br>Judge Paul G. Cassell<br>DECK TYPE: Civil<br>DATE STAMP: 08/31/2005 @ 16:40:18<br>CASE NUMBER:  2:05CV00726  PGC |

Plaintiff, AD-HATTERS, Inc. ("AD-HATTERS"), complains against Defendant WINGO

SPORTS Group, Inc. ("WINGO SPORTS"), as follows:

**THE PARTIES**

1.      AD-HATTERS is a Utah corporation with a principal place of business at 1735 S. Berry

Knoll Road, Centennial Park, Arizona 86021.


2.      Defendant WINGO SPORTS is a Texas corporation with a principal place of business at

4771 Sweetwater Boulevard, Sugar Land, Texas 77479-3199.

## BACKGROUND

3.      Since at least about 1996, AD-HATTERS has been, and continues to be in the business of designing, manufacturing and selling an expanding line of air fresheners principally for use in motor vehicles.  AD-HATTERS sells its air fresheners throughout the United States including the state of Utah.  Air fresheners for use in vehicles typically include a source of a scent positioned in or part of a structure to retain and dispense the scent to the surrounding atmosphere to, in effect, freshen the air with a desired scent or aroma.

4.      AD-HATTERS' line of air fresheners includes different styles and kinds of miniature hats including miniature baseball hats, football helmets, hard hats and a cowboy hat.  The hats are configured to hold a scented disc placed within the interior of the hat.  Miniature hat air fresheners are typically directed at the automobile or vehicle accessory market because they may then be suspended from a suitable knob, handle, or the like.  For example, it is not unusual to see an air freshener suspended from the rear view mirror of an automobile, truck, bus, van or the like, to provide the occupants with the benefit of the scent and the freshened air.

5.      Based on information just obtained and belief, WINGO SPORTS was founded in or about 2000 and started offering a line of actual helmets and mini-helmets reportedly in connection with a then new expansion football league known as the XFL.  Based on information just obtained, WINGO SPORTS was left with a substantial inventory of football helmets for the XFL football league teams when the league failed in the summer of 2001.

2

6.      By the Fall of 2001, AD-HATTERS had decided to introduce a line of miniature (e.g., about 2.5 inches in diameter) football helmets with a scented disc insert as a new style or form of air freshener hat.  At that time, AD-HATTERS believed there was a market for a miniature football helmet air freshener.  Further, it was a natural expansion of its miniature hat line of air fresheners.  AD-HATTERS began to look for sources to economically manufacture such a helmet.

7.      At least by December 18, 2001, AD-HATTERS had been in contact with WINGO SPORTS to discuss WINGO SPORTS acting as a vendor/supplier to AD-HATTERS of the miniature football helmets AD-HATTERS desired.  While WINGO SPORTS had small football helmets, they were about twice the size desired by AD-HATTERS.  Discussions continued with WINGO SPORTS into 2002 and 2003.  WINGO SPORTS learned from AD-HATTERS about the potential market to be served and the final structure of the miniature helmet to be the base or carrier for the scented disc to create the air freshener.  The size of the helmet was important because it had to be suitable to hang from the rear view mirror of a motor vehicle and also to be compatible with the scented discs of AD-HATTERS which AD-HATTERS was already selling.  WINGO SPORTS reported that it could supply miniature football helmets to AD-HATTERS and by February 2002 had supplied price quotes by e-mail to AD-HATTERS.

8.      By the summer of 2002, WINGO SPORTS had begun to supply to AD-HATTERS the desired miniature football helmets.  AD-HATTERS received the helmets and then added the scented disc and packaging to create a marketable product.  To advance those sales, AD-HATTERS began offering its miniature football helmet air freshener product in interstate

3

commerce at least by June of 2002, ordering substantial inventory from WINGO SPORTS in July 2002. The products were an immediate commercial success. A copy of one page of AD-HATTERS' website showing the product is attached as Exhibit A.

9.      By July, 2002, WINGO SPORTS knew that AD-HATTERS had entered into a licensing agreement so that AD-HATTERS could offer miniature football helmets configured to be an air freshener with logos for twelve selected colleges/universities.

10.     By January or February 2002, WINGO SPORTS agreed to acquire molds for manufacturing the miniature football helmets for AD-HATTERS; and in fact it did so. WINGO SPORTS  began to supply the miniature football helmets to AD-HATTERS by July of 2002 at a price that was understood to include an amount to amortize the cost of the molds over time and that would lead to payment in full for the molds. Based on the actions of WINGO SPORTS, AD-HATTERS believed and understood that it had an ownership interest in the molds and that the molds could be used only to supply the miniature football helmets to it and to no one else.

11.     J. T. WINGO and Laura WINGO, the owners and officers of WINGO SPORTS,  traveled to Centennial Park, Arizona on or about October 17, 2002 to visit and participate in what AD-HATTERS believed was a confidential tour of the facilities of AD-HATTERS. In connection with, and as part of such visit, they also traveled in and through Utah, including St. George, Utah; and when in St. George they met with the president of AD-HATTERS over dinner all in connection with the manufacture by WINGO SPORTS of miniature football helmets for AD-HATTERS. Upon information and belief, WINGO SPORTS, prior to contact with AD-HATTERS, had no specific knowledge or background in the manufacturing and sale of air

4

fresheners for the automobile market and the related costs and margins.  On information and belief, WINGO SPORTS, by September 2002 had developed an intent to copy the AD-HATTERS product and price the miniature football helmet being sold to AD-HATTERS so that AD-HATTERS could not effectively compete.

12.     At all times, WINGO SPORTS held itself out to be a vendor capable of supplying a component to AD-HATTERS.  At all relevant times, AD-HATTERS was led to believe and believed that WINGO SPORTS was a responsible and reliable vendor, that there existed an environment of trust and confidentiality between WINGO SPORTS and AD-HATTERS, and that there existed an environment in which WINGO SPORTS, as a vendor, would not adopt as its own the miniature football helmet for use as an air freshener it had agreed to make and was making for AD-HATTERS and go in to competition with AD-HATTERS by selling that product.  WINGO SPORTS never disclosed or discussed a plan to learn about the automotive air freshener market, and thereafter raise the wholesale price to AD-HATTERS knowing that such would effectively put AD-HATTERS at a competitive disadvantage.

13.     Upon information and belief, after AD-HATTERS had disclosed the details of its plans to make and sell a miniature football helmet air freshener, WINGO SPORTS developed a plan to help AD-HATTERS so it could learn all that WINGO SPORTS needed so that WINGO SPORTS could itself offer for sale and sell a miniature football helmet air freshener.

14.     From the product's inception until January, 2004, WINGO SPORTS was the sole supplier of the miniature football helmet to AD-HATTERS for use by AD-HATTERS to create its miniature football helmet air freshener.  Because WINGO SPORTS has retained the tooling and

5

raised the prices for miniature football helmets so that AD-HATTERS cannot afford to buy them, and because WINGO SPORTS thereafter refused to supply miniature football helmets to AD-HATTERS, AD-HATTERS was forced to find another supplier and incur all the costs associated with finding a new supplier and was forced to buy new tooling.

15.     Upon information just obtained and belief, WINGO SPORTS, without the knowledge or consent of AD-HATTERS, began selling its own version of the football helmet air freshener on or about September, 2002. By September, 2002, WINGO SPORTS had acquired a number of scented discs from AD-HATTERS and used them, upon information and belief, to get copies made by others so that it could incorporate them into the miniature football helmets and offer a miniature football helmet air freshener product essentially identical to AD-HATTERS' product. A copy of one page of WINGO SPORTS' website showing its product and the replaceable scented disk, the image of which scented disc is believed to be taken directly from AD-HATTERS' website, is attached as Exhibit B.

16.     AD-HATTERS continues to offer its miniature football helmet air freshener product in interstate commerce using its existing inventory.

17.     Upon information just obtained and belief, WINGO SPORTS filed for and obtained United States Trademark Registration Number 2,878,487 having a registration date of August 31, 2004 (Copy of a data sheet for the mark is attached as Exhibit C) claiming first use in interstate commerce on September 30, 2002. (The "HELMET REGISTRATION"). The HELMET REGISTRATION is listed as a design image of a football helmet virtually identical to the miniature football helmet AD-HATTERS asked WINGO SPORTS to make for AD-

6

HATTERS and which AD-HATTERS started to sell at least by June, 2002.  The HELMET

REGISTRATION describes the goods as "Air Fresheners".

18.     On December 13, 2004, AD-HATTERS received a letter dated December 9, 2004 from

counsel to WINGO SPORTS, a copy of which is attached as Exhibit D.  In this letter, WINGO

SPORTS asserts that it is the registered owner of the HELMET REGISTRATION and asserts

that AD-HATTERS is infringing trademark rights of WINGO SPORTS in violation of 15 U.S.C.

§§1114 and 1125 (Lanham Act)  and the trademark rights of WINGO SPORTS at common law.

AD-HATTERS has thus been presented with a real claim and is apprehensive that WINGO

SPORTS will take action against AD-HATTERS.

19.     AD-HATTERS believes it has lost sales due to the activities and accusations of WINGO

SPORTS, and will continue to lose future sales if WINGO SPORTS is allowed to continue its

present course of action.  AD-HATTERS is informed and believes that WINGO SPORTS also

has knowledge and access to certain important customers of AD-HATTERS; and AD-

HATTERS is informed and believes that WINGO SPORTS has taken steps to interfere with the

ability of AD-HATTERS to sell to such customers by, among other things, reporting the charge

of infringement against AD-HATTERS.

20.     AD-HATTERS has developed good will and trademark rights in the appearance of its

miniature football helmet air freshener which trademark rights and related good will are superior

to any rights of WINGO SPORTS.

21.     The trademark rights and good will of AD-HATTERS in the image of its miniature football helmet air freshener are being irreparably damaged by WINGO SPORTS offering to sell and selling a copy of the AD-HATTERS miniature football helmet air freshener.

## JURISDICTION AND VENUE

22.     This is a suit for a Declaratory Judgment of invalidity and non-infringement of a trademark which is registered by the United States Patent and Trademark Office.  Subject matter jurisdiction is proper in this court under 15 U.S.C. §§ 1051 et seq. (Lanham Act), 15 U.S.C. 1125(a) (Federal Unfair Competition), 28 U.S.C.A. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademarks).  Also, there is an actual case and controversy between the parties so that jurisdiction is proper under 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act).

23.     This court also has supplemental jurisdiction over the state law claims including common law trademark infringement of the trademark rights of AD-HATTERS and common law unfair competition, all pursuant to 28 U.S.C.A. § 1367.

24.     This Court has personal jurisdiction over WINGO SPORTS because WINGO SPORTS has physically entered the state of Utah in connection with the matters here at issue and on information and belief, has conducted and conducts business in the State of Utah.

25.     Venue is proper in this district under 28 U.S.C.A. §§ 1391.

## FIRST CLAIM

(Declaratory Judgment of Non-infringement
and Invalidity of a Registered Trademark)

26.     AD-HATTERS repeats and incorporates by reference the allegations contained in

paragraphs 1 through 25 the same as if set fully forth herein.

27.     WINGO SPORTS has charged AD-HATTERS with infringement of the HELMET

REGISTRATION because AD-HATTERS is offering for sale and selling its miniature football

helmet air fresheners and has presented AD-HATTERS with a written demand for relief and

threatened a lawsuit against AD-HATTERS if it does not cease and desist from further sales of

its miniature football helmet air fresheners.

28.     AD-HATTERS originated and began use of the miniature football helmet air freshener in

interstate commerce before WINGO SPORTS and is thus, the senior user; and in turn, AD-

HATTERS is not infringing any rights of WINGO SPORTS.

29.     AD-HATTERS  believes that all charges of trademark infringement are groundless and

unlawful and that the alleged trademark rights of WINGO SPORTS were obtained illegally,

fraudulently and unlawfully, and that rights of AD-HATTERS to a trademark in the miniature

football helmet for air fresheners are earlier in time and superior to whatever alleged rights held

by WINGO SPORTS, if any.

30.     In turn, there is an actual, present, real and justiciable controversy between AD-

HATTERS and WINGO SPORTS concerning the rights of AD-HATTERS and WINGO

SPORTS to sell miniature football helmet air fresheners and the right to ownership of and use of a miniature football helmet trademark.

31.     AD-HATTERS seeks judgment from this Court declaring that the trademark rights of AD-HATTERS to its miniature football helmet as a trademark for air fresheners are earlier in time and superior to those of WINGO SPORTS and any use by AD-HATTERS of the miniature football helmet does not constitute infringement of any alleged federal or common law trademark rights of WINGO SPORTS.

## SECOND CLAIM

(Declaratory Judgment of Invalidity of a Trademark)

32.     AD-HATTERS repeats and incorporates by reference the allegations contained in paragraphs 1 through 25 the same as if fully set forth herein.

33.     WINGO SPORTS has asserted ownership and infringement of a trademark for a miniature football helmet which is the subject of United States Trademark Registration No. 2,878,487, which trademark and registration is invalid and unenforceable because it was obtained by inequitable conduct and by fraud by failing to identify the originator and owner of the mark as AD-HATTERS so that the mark is invalid.

34.     An actual, present, real and justiciable controversy exists between AD-HATTERS and WINGO SPORTS because WINGO SPORTS has accused AD-HATTERS of infringing the trademark rights of WINGO SPORTS, which trademark is invalid and unenforceable.

#179603 v4

35.     United States Trademark Registration No. 2,878,487 for a miniature football helmet and the trademark of a miniature football helmet should be declared invalid.

### THIRD CLAIM

(Unfair Competition)

36.     AD-HATTERS repeats and incorporates by reference the allegations contained in paragraphs 1 through 25 the same as if fully set forth herein.

37.     The conduct and activities and threatened conduct and activities of WINGO SPORTS constitute unfair and unlawful competition.

38.     AD-HATTERS is being damaged and will be irreparably damaged by WINGO SPORTS' conduct and activities in offering to sell and selling the miniature football helmet air freshener of AD-HATTERS, and will suffer irreparable harm unless WINGO SPORTS' conduct and activities are enjoined.

39.     AD-HATTERS is entitled to recover from WINGO SPORTS the gains, profits, and advantages it has obtained as a result of the wrongful acts alleged above, in an amount to be proven at trial.

40.     The conduct of WINGO SPORTS, upon information and belief, as undertaken willfully and wantonly, and with the intention of driving AD-HATTERS out of the business of selling miniature football helmet air fresheners, and in turn, AD-HATTERS is entitled to exemplary, increased and punitive damages in an amount to be determined which is believed to be an amount of no less than $100,000.00

11

#179603 v4

## FOURTH CLAIM

(Misappropriation of Confidential Information or Trade Secrets)

41.     AD-HATTERS repeats and incorporates by reference the allegations contained in paragraphs 1 through 25 the same as if fully set forth herein.

42.     AD-HATTERS had and has confidential information regarding the manufacture and sale of air fresheners for the automotive market and regarding the manufacture and sale of a miniature football helmet air freshener.  WINGO SPORTS knew that AD-HATTERS possessed confidential information and led AD-HATTERS to believe there was an environment of confidentiality between WINGO SPORTS and AD-HATTERS and thus, caused AD-HATTERS to disclose confidential information of AD-HATTERS to WINGO SPORTS which WINGO SPORTS unlawfully misappropriated.

43.     AD-HATTERS is entitled to an injunction preventing WINGO SPORTS from all further use of the trade secrets and confidential information of AD-HATTERS.

44.     AD-HATTERS has been damaged by the conduct of WINGO SPORTS in an amount to be determined at trial which amount is believed to be no less than $50,000 exclusive of interest, attorneys fees and costs.

45.     The conduct of WINGO SPORTS was willful and deliberate and undertaken by a deliberate plan with the intent of harming AD-HATTERS and using the confidential information of AD-HATTERS to enter into and take the miniature helmet air freshener business for itself;

12

and therefore, AD-HATTERS is entitled to exemplary and punitive damages in an amount to be set at trial believed to be no less than $100,000.00.

## FIFTH CLAIM

(Breach of Implied Covenant of Good Faith and Fair Dealing)

46.     AD-HATTERS repeats and incorporates by reference the allegations contained in paragraphs 1 through 25.

47.     By virtue of the various contracts between WINGO SPORTS and AD-HATTERS and in their three year course of dealing, and by Ad-Hatter's justifiable reliance on WINGO SPORTS' repeated representations and silence during that time, WINGO SPORTS owed and owes a duty of good faith and fair dealing to AD-HATTERS.  The duty of good faith and fair dealing required and requires WINGO SPORTS to refrain from taking any action which would deprive AD-HATTERS of the benefits of the miniature football helmet to which it was entitled under the contracts, both oral and written, existing between the parties.

48.     WINGO SPORTS has unlawfully beached its duty of good faith and fair dealing to and with AD-HATTERS.

49.     As a direct and proximate result of its unlawful conduct, WINGO SPORTS has damaged AD-HATTERS in an amount to be proven at trial which is believed to be no less than $50,000 not including interest, attorneys' fees and costs.

50.     AD-HATTERS is entitled to an injunction preventing WINGO SPORTS from all further use of the trade secrets and confidential information of AD-HATTERS.

#179603 v4

51.     The conduct of WINGO SPORTS was willful and deliberate and undertaken by a deliberate plan with the intent of harming AD-HATTERS and taking the miniature helmet air freshener business for itself; and therefore, AD-HATTERS is entitled to exemplary and punitive damages in an amount to be set at trial believed to be no less than $100,000.00.

## SIXTH CLAIM

(Unfair Competition Under the Lanham Act)

52.     Ad-Hatters repeats and incorporates by this reference the allegations contained in paragraphs 1 through 25 the same as if fully set forth herein.

53.     Upon information and belief, WINGO SPORTS is advertising, offering for sale and selling a miniature football helmet air freshener and is thereby falsely advertising that it is the legitimate purveyor of such and causing confusion as to the source of such air fresheners in violation of the Lanham Act, 15 U.S.C. § 1125(a) of the Lanham Act.

54.     As a direct and proximate result of its unlawful conduct, WINGO SPORTS has damaged AD-HATTERS in an amount to be proven at trial which is believed to be no less than $50,000 not including interest, attorneys' fees and costs.

55.     AD-HATTERS is entitled to an injunction preventing WINGO SPORTS from all further actions causing confusion as to the source of miniature football helmet air fresheners.

56.     The conduct of WINGO SPORTS was willful and deliberate and undertaken by a deliberate plan with the intent of harming AD-HATTERS and taking the miniature helmet air

14

freshener business for itself; and therefore, AD-HATTERS is entitled to exemplary and punitive damages in an amount to be set at trial believed to be no less than $100,000.00.

**SEVENTH CLAIM**

(State Statutory Unfair Competition)

57.    AD-HATTERS repeats and incorporates by reference the allegations contained in paragraphs 1 through 25 the same as if fully set forth herein.

58.    WINGO SPORTS is unfairly and unlawfully competing in violation of Utah Code Annotated §§ 13-5-1 et seq.

59.    As a direct and proximate result of its unlawful conduct, WINGO SPORTS has damaged AD-HATTERS in an amount to be proven at trial which is believed to be no less than $50,000 not including interest, attorneys' fees and costs.

60.    AD-HATTERS is entitled to an injunction preventing WINGO SPORTS from all further acts of unlawful competition in violation of Utah Code Annotated §§ 13-5-1 et seq.

61.    The conduct of WINGO SPORTS was willful and deliberate and undertaken by a deliberate plan with the intent of harming AD-HATTERS and taking the miniature helmet air freshener business for itself; and therefore, AD-HATTERS is entitled to exemplary and punitive damages in an amount to be set at trial believed to be no less than $100,000.00.

## EIGHTH CLAIM

(Common Law Trademark Infringement)

62.     AD-HATTERS repeats and incorporates by reference the allegations contained in paragraphs 1 through 25 the same as if fully set forth herein.

63.     AD-HATTERS has obtained common law trademark rights in a miniature football helmet used as part of an air freshener principally for motor vehicles.

64.     WINGO SPORTS has adopted and is offering for sale and selling a miniature football helmet air freshener is thereby unlawfully infringing the common law trademark rights of AD-HATTERS.

65.     As a direct and proximate result of the actions of WINGO SPORTS, AD-HATTERS has been and continues to be damaged in an amount to be proven at trial.

66.     AD-HATTERS is entitled to an injunction preventing WINGO SPORTS from all further actions of trademark infringement.

67.     The conduct of WINGO SPORTS was and it deliberate and willful undertaken to harm AD-HATTERS; and therefore AD-HATTERS is entitled to exemplary and punitive damages to be set at trial.

## JURY TRIAL DEMANDED

AD-HATTERS hereby demands trial by jury on all issues triable to a jury as a matter of right which are alleged in the COMPLAINT FOR DECLARATORY JUDGMENT herein set forth.

16

#179603 v4

## PRAYER FOR RELIEF

WHEREFORE, AD-HATTERS respectfully requests and prays that the Court enter judgment in its favor and against WINGO SPORTS by adjudging, decreeing and ordering as follows:

A.      For a declaration and judgment that United States Trademark Registration No. 2,878,487 is invalid, void and unenforceable and that AD-HATTERS has not at any time infringed the same, and that it is the right of AD-HATTERS and its customers to continue their business without any further action, threat or interference of any kind or nature by WINGO SPORTS or by anyone claiming through or under WINGO SPORTS on account of said trademark;

B.      For an injunction preliminarily and permanently restraining and enjoining defendant WINGO SPORTS from asserting, threatening or otherwise relying upon United States Trademark Registration No. 2,878,487 against plaintiff AD-HATTERS or its customers;

C.      For an injunction preliminarily and permanently restraining and enjoining WINGO SPORTS from infringing the common law trademark rights of AD-HATTERS.

D.      Damages in an amount to be determined at trial which are believed to be at least $50,000.00 exclusive of attorney's fees, costs and interest.

E.      That the Director of Patents and Trademarks be directed to cancel Trademark Registration No. 2,878,487 dated August 31, 2004 for air fresheners;

F.      Award to AD-HATTERS punitive and exemplary damages in an amount to be set at trial but believed to be in the amount of no less than $100,000.00;

G.      Award AD-HATTERS its costs in this action; and

17

#179603 v4

H.      Enter such other further relief to which AD-HATTERS may be entitled as a

matter of law or equity, or which the Court determines to be just and proper.

DATED this ____ day of August 2005.

HOLME ROBERTS & OWEN LLP

_____
Thomas J. Rossa
Blaine J. Benard
Jay D. Gurmankin
Jeffery M. Lillywhite

Attorneys for Plaintiff

# EXHIBIT A



## Home

Checkout    Order Status    Search

HOME
ABOUT US
FREE GIFT
NEW PRODUCTS
PRODUCTS
SPECIALS
10 FOR $10
CONTACT US

### Welcome to the World-Famous Little Hats Company!

Is your college team going to a Bowl Game?  Support your favorite team by
hanging up your teams' mini football helmet in your car, home, Xmas tree, or office!

These novelty football air fresheners make great gifts for the holiday season.
*Click on picture below for a complete team listing!*

*FREE*
*shipping!*

USA orders over $49

🛒 **Shopping cart**
0 Product(s) in cart
Total $0.00
**Checkout**



Content © 2002-2004 Ad-Fresh, Inc.
Technology and Design © 2003-2004 ▪T324  All Rights Reserved

# EXHIBIT B

Case 2:05-cv-00726-PGC   Document 1   Filed 08/31/05   Page 22 of 29



# Wingo Sports Group

Coming Soon!     Contact Us

USFL Helmets    Mini Helmet Facemask Kits    World Football League    Mini Racing Helmet

Auto Air Freshener Helmet    Mini Baseball Helmet    Custom Mini and Micro Helmets    Half Helmet

**Home**
**Helmet Air Fresheners**
**Mini/Micro/Half FB Helmets**
**Helmet Facemask Kits**
**Chin Strap Accessories**
**"Old School" USFL/WFL**
**Mini Racing Helmets**
**Mini Baseball Helmets**
**COMING SOON!**
**Purchase Our Products**

## Welcome to the Wingo Sports Group Website

Welcome to our website. This site offers you the opportunity to lea Wingo Sports Group, founded in 1995. We manufacture miniature products. Our mini football, baseball and racing helmets are use applications from creating licensed product to promotional

To learn more about us, click any item on our menu. If you have questions, you may call us on our toll free number 1-888-750-1055, v Sports Group 4771 Sweetwater Blvd #166 Sugar Land Texas 7747 7933 or e mail us by clicking "E Mail Us" below. Thanks for visiting check back often for updated information.

Our product line includes Football Helmet Air Fresheners, Mini Foo Micro Football Helmets and Half Helmets, Mini Racing Helmets, Helmets, Mini Football Helmet Facemask Replacement Kits, Chin Str Kits,  USFL and WFL Helmets

TO PURCHASE OUR PRODUCTS CLICK HERE.

**E Mail Us!**   Become A Distributor   **Our Services   CONT**

Quality Mini Sport



The Football Air Freshener Helmet

# EXHIBIT C



UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Sat Dec 11 04:29:40 EST 2004*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP |

Logout  Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

Check Status *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Goods and Services** | IC 005. US 006 018 044 046 051 052. G & S: Air fresheners. FIRST USE: 20020930. FIRST USE IN COMMERCE: 20020930 |
| **Mark Drawing Code** | (2) DESIGN ONLY |
| **Design Search Code** | 090525 |
| **Serial Number** | 76487133 |
| **Filing Date** | February 3, 2003 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | June 8, 2004 |
| **Registration Number** | 2878487 |
| **Registration Date** | August 31, 2004 |
| **Owner** | (REGISTRANT) Wingo Sports Group, Inc. CORPORATION TEXAS 4771 Sweetwater Blvd., No. 161 Sugarland TEXAS 77479 |
| **Attorney of Record** | Ben D. Tobor |

# EXHIBIT D

HAYNES AND BOONE, LLP

December 9, 2004

Direct Phone Number: (713) 547-2650
Direct Fax Number: (713) 236-5481
alan.rosenthal@haynesboone.com

*Via Certified Mail / Return Receipt Requested*
*No. 7160 3901 9848 7825 2222*

**h** | *b*

Mr. David Timpson
Ad-Hatters
1735 S. Berry Knoll Blvd.
Centennial Park, AZ 86021-1726

Re:    United States Trademark Registration No. 2,878,487
       [36199.2]

Dear Mr. Timpson:

It has come to the attention of our client, Wingo Sports Group, Inc. ("Wingo"), that you are infringing Wingo's trademark rights in violation of 15 U.S.C. §§ 1114 and 1125 and at common law.  Specifically, you have engaged in the importation and sale of products that infringe United States Trademark Registration No. 2,878,487 owned by Wingo.  This U.S. Trademark Registration is for a three dimensional representation of the configuration of the goods, which consist of an air freshener associated with a football style helmet, as shown below:



By law, this registration is *prima facie* evidence of (i) the validity of the registered mark and of the registration of the mark, (ii) Wingo's ownership of the mark, and (iii) Wingo's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration.

12/13/04      16:56      AD-HATTERS, INC. → R      F                                                    NO.059      P03

HAYNES AND BOONE, LLP

Mr. David Timpson
December 9, 2004
Page 2

You have previously purchased the trademarked goods from Wingo. However, in the event that you were not aware of Wingo's trademark rights, you may demonstrate your good faith in this matter by agreeing to immediately cease and desist from all further sales of infringing products. If you notify me in writing of your agreement to do so within two weeks of receiving this letter, Wingo is willing to consider your infringement to have been innocent and forgo its damages for your infringement to date.

However, if you ignore this letter or refuse to cease all infringing activities, Wingo will be forced to consider your infringement to be deliberate and willful. In that event, Wingo will vigorously pursue its legal remedies to stop such infringement and recover damages for infringement, both past and future. Pursuant to 15 U.S.C. § 117, this may include recovery of your profits *plus* Wingo's actual damages *plus* Wingo's costs of suit. Moreover, if the infringement is intentional, the court has a mandate to increase the amount of the damages by a factor of 3 and award Wingo its attorneys' fees.

I will look forward to your prompt response. If you have any questions, please feel free to contact me at my address or telephone number as shown on the first page of this letter.

Very truly yours,

*Alan Rosenthal /jh*

Alan Rosenthal
Partner

cc:     Mr. J.C. Wingo (Wingo Sports Group, Inc.)
        Mr. David F. Kirkpatrick (The Collegiate Licensing Company)
        Mr. Dick Rademarker (Licensing Resource Group, Inc.)
        Mr. Jeff Chi (UNA International Limited)
        Ms. Sarah Harris (*Firm*)

517757_2.DOC

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

AD-HATTERS, Inc.

## DEFENDANTS

Wingo Sports Group, Inc.

FILED
U.S. DISTRICT COURT
2005 AUG 31 P 4: 39
DISTRICT OF UTAH
BY:
DEPUTY CLERK

**(b)** County of Residence of First Listed Plaintiff   Salt Lake County
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Fort Bend County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Thomas J. Rossa, HOLME ROBERTS & OWEN, 299 South Main, Suite 1800, Salt Lake City Utah 84111, 801-521-5800

Attorneys (If Known)

Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question (U.S. Government Not a Party)
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☒ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from another district (specify)
- ☐ 6   Multidistrict Litigation
- ☐ 7   Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:
Declaration Judgment under 28 USC sec 2201 and 15 USC 105

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 50,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE   31 Aug 2005

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____

Judge Paul G. Cassell
DECK TYPE: Civil
DATE STAMP: 08/31/2005 @ 16:40:18
CASE NUMBER:   2:05CV00726  PGC